**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Juanita C., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:20-cv-50171 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juanita C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

### I. Background

On December 15, 2016, Plaintiff filed an application for disability insurance benefits alleging that she had been unable to work since May 1, 2016 because of post-traumatic stress disorder, anxiety, chronic obstructive pulmonary disease ("COPD"), and dyslexia. R. 275. Plaintiff later indicated that she was also disabled because of an eating disorder. R. 298. Plaintiff's work history consisted of working as a certified nursing assistant, with reports of working sporadically on a part-time basis through March 2018.

Plaintiff's medical records consist largely of treatment for COPD and mental health issues, including anxiety and eating issues. Because Plaintiff's appeal focuses on her anxiety and eating issues, the Court will concentrate on those records.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

In March 2016, Dr. Kyle J. Cushing submitted a court-ordered psychological examination report after evaluating Plaintiff on four separate occasions between November 2015 and March 2016. R. 342-47. Plaintiff was examined to determine her visitation with her children as part of a Department of Children and Family Services investigation. According to the report, Plaintiff's three younger children were removed from her care in 2010 after she was accused of abuse and neglect. Plaintiff stated that she attended some counseling at age seven because of problems eating. Plaintiff stated that she was diagnosed with PTSD and reported some PTSD symptoms during her examination, but Dr. Cushing noted that Plaintiff did not produce corroborating reports of a diagnosis and did not report such symptomatology on psychological testing. Dr. Cushing found Plaintiff to be an unreliable historian with numerous inconsistent reports. He opined that Plaintiff may be suffering from Borderline Personality Disorder and/or a Bipolar Disorder. He further opined that Plaintiff would benefit from sustained and intensive individual psychotherapy and psychiatric consultation to further address her interpersonal and emotional instability and stabilize her mood and emotional reactivity. Dr. Cushing recommended supervised visitation with her children.

In May 2016, Plaintiff saw her treating physician assistant, Katherine Schenck, at Crusader Community Health and her BMI was 17.81. R. 380. On November 6, 2016, Plaintiff went to the emergency room for contusions and abrasions sustained from a domestic battery incident with her boyfriend. Hospital records did not reveal any broken bones and noted that Plaintiff was well nourished. R. 351-52. On November 15, 2016, Plaintiff saw PA Schenck for her asthma, and it was reported that her BMI was 15.91 and she had great difficulty with anxiety and breathing. R. 377. She also reportedly started counseling at Remedies because of trauma related to the recent domestic abuse incident. In December 2016, Plaintiff saw counselor Therese Jarvi for PTSD

related to her trauma and PA Schenck for her asthma. R. 371-75. Plaintiff's BMI was 16.53. Plaintiff reported she was fearful of leaving her home and being around people. Plaintiff also reported a low appetite but improved mental health. PA Schenck started Plaintiff on medication for anxiety relating to her trauma.

In January 2017, when Plaintiff was treating for her COPD, she reported a broken jaw, fractured skull, and rape from the November 2016 domestic abuse incident. R. 410. Plaintiff reported struggling with PTSD, anxiety, a loss of appetite, nausea, and vomiting. Plaintiff's BMI was 16.46. Plaintiff reported managing her weight with dietary supplements and small frequent meals. Plaintiff's examination revealed she was positive for dizziness, but her strength and gait remained normal.

On March 2, 2017, Dr. John L. Peggau conducted a psychological consultative examination at the request of the Social Security Administration. R. 435-38. Plaintiff drove herself to the evaluation and was living at her daughter's house. Plaintiff reported being disabled due to her anxiety and PTSD. She was taking medications but not was not attending therapy at time of the examination. Dr. Peggau noted that Plaintiff was "quite thin," but her activity, gait, and posture were normal. R. 436. Plaintiff reported doing her own laundry, grocery shopping, cooking, and cleaning. Dr. Peggau found Plaintiff "extremely dramatic," with "an exaggerated expression of emotions and was somewhat theatrical in this presentation." R. 436-37. Dr. Peggau noted that there were inconsistencies between Plaintiff's reports and the records, particularly relating to her injuries from the domestic battery incident. Dr. Peggau found that Plaintiff demonstrated poor judgment and limited mental agility and was not capable of managing her finances. Dr. Peggau diagnosed Plaintiff with unspecified anxiety disorder and unspecified personality disorder with histrionic features.

On March 16, 2017, Plaintiff saw counselor Jarvi and PA Schenck for her anxiety and PTSD. R. 440-44. Plaintiff reported struggling with anorexia and environmental stressors from leaving an abusive relationship. Her BMI was 16.64. Plaintiff's anxiety medications were changed because Plaintiff reported increased anxiety and difficulty leaving the house and sleeping. However, Plaintiff reported some irregular use of her medications. It was recommended that Plaintiff seek domestic violence counseling at Remedies. Plaintiff declined the referral and instead sought additional counseling services at Crusader Community Health.

On April 5, 2017, state agency physicians reviewed Plaintiff's medical records and found that she had the following severe impairments: COPD, anxiety, obsessive-compulsive disorders, and personality disorders. R. 97. The physicians noted Plaintiff's difficulty eating, her BMI of 17.8 and 16.5, and her reports that it was easier to eat with someone around. The physicians also noted Plaintiff's history of endometriosis but no records to support the presence of a current digestive issue, opining that her low BMI was likely related to her psychological issues.

The physicians evaluated Listing 12.06 for anxiety and obsessive-compulsive disorders and Listing 12.08 for personality and impulse-control disorders but found that Plaintiff did not satisfy the required criteria for either Listing. In evaluating the paragraph B criteria, they found Plaintiff mildly limited in: (1) understanding, remembering or applying information; and (2) adapting or managing oneself. They found Plaintiff moderately limited in: (1) interacting with others; and (2) concentrating, persisting or maintaining pace. The physicians found that Plaintiff had the capacity to perform unskilled, light work with moderate limitations in her ability to interact with the general public and accept instruction from supervisors, along with environmental limitations.

In April and May 2017, Plaintiff saw counselor Jarvi and PA Schenck for her anxiety. R. 452-58. Plaintiff reported improved coping skills, spending more time with family, a better appetite, and her medications were helping. However, Plaintiff was still afraid to leave her house and had difficulty eating. Plaintiff continued to suffer from an abusive relationship and made conflicting reports about living with both her daughter and her abuser. *See* R. 452, 455.[2] Plaintiff's BMI was 16.97. Plaintiff was initially hesitant to seek additional counseling services that were being recommended, but she later informed PA Schenck that she agreed to pursue such services. In July 2017, Plaintiff saw counselor Jarvi for anxiety and reported stressors caused by her abuser and being unable to pay for her mortgage which exacerbated symptoms such as nausea, vomiting, and weight loss. R. 509-10. Plaintiff's mental status exam noted a "flight of ideas" for her thought process. R. 509.

In May 2017, Plaintiff submitted a disability report stating that her anxiety exacerbated her COPD and prevented her from leaving her house, except to go to counseling and doctor appointments. R. 288. In June 2017, Plaintiff submitted a function report stating that her anxiety also prevented her from driving unless necessary because of panic attacks. R. 308. Plaintiff reported that she had problems concentrating, did not handle stress well, vomited most days, and had no strength due to her low weight. Plaintiff spent time with her daughter and granddaughter to become more confident in being around other people, but she reported no problems getting along with other people. Plaintiff was able to walk and drive alone but would usually go out with her daughter due to her anxiety. Her daughter helped her take care of her pets and grocery shop.

---

[2] R. 452 (5/17/2017 Progress Notes, counselor Jarvi: "reports environmental stressors which exacerbate sx- abusive husband, living with daughter to stay safe from abuser"); R. 455 (5/17/2017 Progress Notes, PA Schenck: "She has continued to live with her abuser and has suffered a lot of recent trauma.").

However, Plaintiff was able to prepare simple meals and do household chores and yard work in small increments, noting that she needed to rest. Plaintiff also gardened and did crafts.

On August 3, 2017, counselor Jarvi saw Plaintiff for her anxiety and reported Plaintiff's thought process as "logical and organized" with her behavior as "over[]ly dramatic." R. 615.

On August 24, 2017, additional state agency physicians reviewed Plaintiff's medical records and affirmed the prior assessments made by the physicians in April 2017 with one additional consideration. R. 107-23. They evaluated Listing 12.15 for trauma and stressor-related disorders. However, the physicians also found that Plaintiff did not satisfy the required criteria for this Listing.

On August 30, 2017, Plaintiff sought a note from PA Schenck that she could not return to work as a CNA. R. 606. PA Schenck noted that since last year, Plaintiff had no consistent counseling and was being referred to Remedies for her PTSD and domestic abuse issues. She also reported that Plaintiff's anxiety relating to fear of her abuser caused Plaintiff to suffer weight loss, poor appetite, and a fear of leaving her house. Plaintiff's BMI was 16.09. In December 2017, Plaintiff reported to counselor Jarvi that she had an improved mood until she became stressed over her brother's murder and custody issues with her children. R. 600. Plaintiff had been working part-time but indicated she was not strong enough.

In January 2018, PA Schenck reported that Plaintiff was gaining weight, eating better, and living in a different home, except for the two days a week she was working as a CNA. R. 596. Her BMI was 18.65. However, Plaintiff reported to counselor Jarvi that she unable to work more than two days per week, noting stress from her financial and domestic abuse problems. R. 593. It was recommended that Plaintiff seek additional counseling services. In March 2018, Plaintiff began counseling with social worker Christina Geiselhart for her anxiety after counselor Jarvi left the

6

clinic. R. 587. Plaintiff reported a difficulty focusing at work. Plaintiff also reported that despite taking her medications she had been vomiting because she did not feel safe from her abuser. R. 584. She also reported to PA Schenck that she collapsed during a court appearance and was experiencing increased anxiety, which caused her to lose weight and her appetite. R. 590. Her BMI was 17.52. In April 2018, Plaintiff saw counselor Susan Allen for her anxiety and depression. R. 577-80. Plaintiff reported environmental stressors that overwhelmed her, including her legal issues relating to her abuser and custody of her children. Counselor Allen reported Plaintiff's thought process as "flight of ideas, tangential, perseveration." R. 577. In May 2018, Plaintiff saw counselor Allen and PA Schenck for her mood. R. 561-69. Plaintiff was reportedly making progress with her mood and anxiety, noting that counseling was helping. However, Plaintiff reported a recent negative interaction with court personnel, along with weight loss and vomiting. Her BMI was 16.64. Plaintiff was told to focus on her emotional regulation skills.

In August 2018, Plaintiff saw counselor Allen and PA Schenck for her anxiety. R. 551-58. Plaintiff reported an improved mood after staying with her daughter out of town. Plaintiff was "doing well overall with her regime," but had three episodes in July with a poor appetite. R. 551. Plaintiff reported difficulty concentrating and recent episodes of dizziness, lost vision, and vomiting. However, Plaintiff stated she was "actively preventing" these episodes by increasing her calories and staying with her daughter. R. 551. Plaintiff started using Xanax when she attended court appearances. Plaintiff's BMI was 17.70 and her thought process was reported as "perseveration, concrete thinking." R. 556. Counselor Allen assessed Plaintiff with a mood disorder.

In September 2018, Plaintiff sought treatment at Alexian Brother Behavioral Health Hospital for anxiety, PTSD, and an eating disorder. R. 631-38. Plaintiff reported that she had not

eaten in three days due to a loss of appetite, nausea, and unintentional vomiting. Her BMI was approximately 16.83. Plaintiff reported fluctuating symptoms of anxiety, eating issues, vomiting, and PTSD since the domestic battery incident in November 2016. Plaintiff reported problems leaving her house and driving for the past two years and panic attacks daily due to her anxiety. Plaintiff reported that medication helped her symptoms, but she had difficulty taking it without vomiting. Plaintiff's thought process was reported as "impaired judgment," but she was reportedly able to concentrate and focus. R. 636. The intake disposition, which was reported by a nurse aid after consulting with the emergency room doctor, reflected that Plaintiff's primary disorder was an eating disorder and her secondary disorders were major depressive disorder and anxiety. *Id.* On the recommendation of the emergency room doctor, Plaintiff was admitted to outpatient treatment.

On November 14, 2018, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). R. 36-91. Plaintiff was then 45 years old. In Plaintiff's counsel's opening statement at the hearing, she argued that due to Plaintiff's significant difficulties in interacting with others she would meet or equal Listings 12.04 and 12.06. The ALJ noted the lack of acceptable medical source opinions in the record and limited information about Plaintiff's functional abilities in a work setting. The ALJ emphasized the need to develop such evidence through Plaintiff's testimony.

Plaintiff testified that starting in 2016 she began falling and hitting her head because she would get dizzy. Plaintiff attributed it to past trauma and the lack of nutrition. Plaintiff had been treating at Crusader Community Health for her anxiety and explained that vertigo and anxiety prevented her from working a full-time job because she could not drive. Plaintiff testified that she was often prescribed medications, but they were difficult to take because she could not keep a glass of water down. Plaintiff testified that she was diagnosed with anorexia neurosis when she

8

was a child and continued to struggle with it. Plaintiff would vomit when upset. Plaintiff testified that she was 5' 3" and weighed 90 pounds (BMI: 15.94). She also stated that she was "doing a lot better" because in 2017 she weighed only 80 pounds. R. 52. Plaintiff started living with her daughter, which relieved her anxiety and helped her eat.

When the ALJ asked Plaintiff why she stopped working, Plaintiff explained that in March 2016 she was fired after her employer saw her court-ordered mental evaluation. R. 64-65. Plaintiff then made the contradictory statement that she was wrongfully terminated after another nurse's patient fell. R. 65. Plaintiff worked full-time for approximately one month in the fall of 2016, but she stopped working when her patient went into the hospital and she was not assigned another patient. In December 2017, she returned to work as a certified nursing assistant on an as-needed basis for approximately three months working 11:00 p.m. to 7:00 a.m. two times a month. However, Plaintiff testified that she was written up twice for failing to complete her shifts and she eventually quit. Plaintiff also testified that she had difficulty working because her inability to eat made her weak, she was often throwing up or dizzy, and she had difficulty breathing, driving to work, and controlling her emotions.

Plaintiff testified that she took numerous medications for her depression and anxiety. However, she had difficulty taking her medications as prescribed without vomiting and testified to episodes approximately every two weeks where she stopped taking her medications. She also testified that she was unable to drive while taking all her medications because they made her forget what she was doing.

Plaintiff testified that she went to Alexian Brothers in September 2018 for her stomach issues. Plaintiff testified that medications helped but not all the time. Plaintiff testified that she knew her stomach issues were a mental issue because she used to be able to control her stomach

issues by eating after she was no longer upset. However, since November 2016 Plaintiff stated that she was no longer able to control it.

Following the hearing, the ALJ left the record open and received additional evidence from Rockford Sexual Assault Counseling and Remedies. R. 339. The records from Rockford Sexual Assault Counseling spanned from January 2016 through December 2018 but provided limited information. R. 643-64. Remedies reported that it did not have any relevant records. R. 666. On April 17, 2019, the ALJ issued her decision denying Plaintiff's request for benefits. R. 16-26. The ALJ found that Plaintiff had the following severe impairments: anxiety and personality disorders and COPD. The ALJ found no severe impairments relating to Plaintiff's low BMI by stating: "Nor is the claimant's low Body Mass Index likely related to digestive issues absent any related diagnosis. 16F. Therefore, there are no severe impairments from this condition and the following RFC does not include any, absent evidence of work-related limitation of function." R. 18.

The ALJ also determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ found that although Plaintiff's anxiety and personality disorders satisfied the paragraph A criteria for Listings 12.06 and 12.08, she did not satisfy the paragraph B or C criteria for the Listings. The ALJ found that Plaintiff was only moderately limited in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions, including that Plaintiff "can learn, understand, remember and carry out simple work instructions; no work with the general public or patients; occasional, brief interactions with co-workers; no team work or tandem work." R. 19. The ALJ found that with this RFC, Plaintiff

"would be able to adequately sustain the required concentration, persisten[ce] or pace in 2-hour increments throughout the typical workday." R. 20.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, the reviewing court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

## III. Discussion

Plaintiff argues that the ALJ erred by failing to: (1) evaluate her eating disorder under Listing 12.13; (2) analyze her symptoms relating to her eating issues in the paragraph B criteria

11

contained in Listings 12.06 and 12.08; and (3) account for the effect her eating issues had on the limitations in her RFC. The Commissioner responds with one main argument in his six-page brief:

> Plaintiff properly frames the issues as to whether substantial evidence supports the ALJ's finding that plaintiff did not have a medically determinable eating disorder impairment. Two stage agency physicians considered plaintiff's low body mass index yet did not include an eating disorder in plaintiff's medically determinable impairments. Plaintiff submitted no evidence from an acceptable source, or even from her treating physician's assistant, that she had an eating disorder. Lacking this medically determinable impairment, plaintiff's other arguments fail.

Defendant's Response at 1, Dkt. 16.

The Commissioner's conclusory argument does not address the real issue with the ALJ's decision. To be clear, the ALJ did not make any findings in her decision about Plaintiff's eating disorder. At step two, the ALJ stated the following: "Nor is the claimant's low Body Mass Index likely related to digestive issues absent any related diagnosis. 16F. Therefore, there are no severe impairments from this condition and the following RFC does not include any, absent evidence of work-related limitation of function." R. 18.

The ALJ stated that she would not include any limitations in the RFC relating to Plaintiff's low BMI but failed to address the evidence in the record that Plaintiff's eating issues were a symptom of her anxiety and personality disorders, which the ALJ found to be severe mental impairments. Throughout the record, Plaintiff's medical records reflect a lower BMI and greater difficulty with eating, vomiting, and taking medications when Plaintiff reported increased anxiety or difficulty coping with environmental stressors. *See, e.g.*, R. 440-44, 509-10, 561-69, 584, 590, 600-01, 606, 632-33. Plaintiff testified that she continued to struggle with anorexia but that controlling her anxiety and emotions reduced her vomiting and made it easier to eat. Additionally, the state agency physicians found that Plaintiff's low BMI was likely related to her psychological issues. R. 101.

12

Therefore, even assuming the evidence supports a finding that Plaintiff's eating disorder was not a medically determinable impairment that satisfied Listing 12.13, the ALJ was required to consider Plaintiff's symptoms relating to her eating issues when evaluating Plaintiff's mental functioning as part of the paragraph B analysis for her anxiety and personality disorders and in the RFC determination. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(3)(c) (requiring the ALJ to "consider all evidence about [Plaintiff's] mental disorder and daily functioning before [] reach[ing] a conclusion about [Plaintiff's] ability to work."); *Michelle R. v. Saul*, No. 19 CV 50061, 2020 WL 5530130, at *5 (N.D. Ill. Sept. 15, 2020) ("The ALJ need not base a determination as to the 'B' criteria on medical evidence alone."); 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Yet, the Commissioner makes no attempt to address Plaintiff's arguments that the ALJ failed to evaluate her symptoms relating to her eating issues and instead makes the broad assertion that "only medically determinable impairments can inform the analysis." Defendant's Response at 4, Dkt. 16; *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in waiver). For the reasons discussed below, the Court believes that a remand is required for the ALJ to properly evaluate Plaintiff's symptoms related to her eating issues in both the paragraph B criteria and in the RFC analysis.

### A. Paragraph B Criteria

At step three, the ALJ analyzed Listings 12.06 and 12.08 for Plaintiff's severe anxiety and personality disorders and found that Plaintiff did not meet either Listing because she did not satisfy the paragraph B criteria. To satisfy the paragraph B criteria, Plaintiff must show an extreme

limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E). The ALJ found that Plaintiff was only moderately limited in each of the four areas of mental functioning.

Plaintiff challenges the ALJ's findings, arguing that her testimony and the medical evidence relating to her eating issues support that she has extreme limitations in interacting with others, concentrating, persisting and maintaining pace, and managing herself. The Commissioner's only arguments in response are that the ALJ's findings are supported by the uncontradicted opinions of the state agency reviewing physicians and Plaintiff's low BMI alone cannot show an extreme functional limitation. There are several issues with the Commissioner's argument.

The Commissioner cites to the state agency physicians' opinions finding Plaintiff mildly or moderately limited in the paragraph B criteria as support for the ALJ's determination. Although the ALJ gave great weight to the state agency physicians' opinions when deciding the RFC, she gave no indication that she relied on these opinions when analyzing the paragraph B criteria. The Seventh Circuit has made clear that the Court's review on appeal is confined to the reasons articulated by the ALJ in her decision. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2012).

Even if the ALJ had relied on the state agency opinions, those opinions do not indicate that they considered Plaintiff's eating issues when opining on the paragraph B criteria. This is a concern in this case because the state agency physicians provided the only medical opinions in the record. Despite explicitly stating that Plaintiff's low BMI was likely related to her psychological issues, the state agency physicians only referenced Plaintiff's low BMI and resulting weakness when addressing exertional limitations. They also identify Plaintiff's dizziness, fainting, and difficulty

14

eating but gave no explanation as to how these reported symptoms affected their mental functioning evaluation. Moreover, the state agency physicians did not review Plaintiff's subsequent September 2018 visit to the emergency department where she was referred to outpatient treatment for her anorexia because she had been unable to eat for three days.[3] Plaintiff reported that her treater referred her for treatment because all other resources had been exhausted, and she still could not keep anything down. R. 632, 637. Without an adequate explanation from the state agency physicians regarding how, or if, they factored Plaintiff's eating issues into their opinions regarding the paragraph B criteria, the Commissioner cannot rely on the state agency opinions to provide support for the ALJ's paragraph B analysis. *See Jonie G. v. Saul*, No. 18 CV 50100, 2019 WL 6716610, at *4 (N.D. Ill. Dec. 10, 2019) (finding that the Commissioner could not rely on the state agency physicians opinions that a listing was not met where there was "no evidence in this record that the ALJ in fact relied upon the state agency physician opinions to support his findings at step three" and the opinions "provided no explanation or analysis" on the listing at issue).

The Commissioner specifically rejects Plaintiff's argument that her low BMI alone is evidence of an extreme inability to manage oneself. The inability to manage oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). The ALJ found a moderate limitation, noting that Plaintiff "had difficulty maintaining care and medication schedules, but is mostly able to perform self-care, grooming and hygiene and care for her granddaughter and several pets." R. 19. But this

---

[3] In the RFC analysis, the ALJ gave great weight to the state agency physicians' opinions finding them consistent with and supported by the medical record, noting that "evidence produced subsequent to their submissions is cumulative and does not alter the diagnoses or nature and severity of the impairments discussed above." R. 23. However, the ALJ never directly addresses Plaintiff's medical note from Alexian Brother Behavioral Health Hospital.

analysis ignores Plaintiff's difficulty eating and inability keep food down resulting in a consistently low BMI.

The Commissioner argues that because Plaintiff does not have a physical impairment that identifies a low BMI as a medical sign evidencing the severity of the impairment, her low BMI cannot show an extreme limitation for her mental impairments. What the Commissioner ignores is that Plaintiff claims her low BMI is a manifestation of her anxiety. Even the state agency physicians attributed Plaintiff's low BMI to her psychological issues. If on remand the ALJ believes that Plaintiff's low BMI cannot be considered a symptom of her mental impairments, despite the state agency physicians' opinions to the contrary, the ALJ should explain her reasons or call a medical expert to opine on the issue.

As written, the ALJ's paragraph B analysis makes no mention of Plaintiff's eating issues, low BMI, inability to nourish herself, or her related symptoms of dizziness, vomiting, and weakness and their effects on Plaintiff's mental functioning. The ALJ briefly references Plaintiff's inability to maintain her medication schedules but characterizes her limitations as moderate considering Plaintiff's daily activities. The ALJ does not address the effect that Plaintiff's inability to take medications for her mental impairments has on her ability to regulate her emotions and control her behavior, which likely exacerbate her eating issues. There is also no indication that the ALJ considered Plaintiff's recent emergency department visit where she sought treatment for her anorexia, noting that she had exhausted all other resources. Plaintiff reported being unable to eat for three days and had a BMI of 16.83. Plaintiff was ultimately admitted to outpatient treatment for her eating disorder. Yet, the ALJ did not directly question Plaintiff about these records at the administrative hearing or address these records in her decision, other than to note that Plaintiff did not have a diagnosis for digestive issues. R. 18.

16

The ALJ's discussion fails to assure the Court that she considered Plaintiff's eating issues such that this Court can determine whether her conclusions about the severity of Plaintiff's mental functioning are consistent with the evidence. Accordingly, the Court finds that the ALJ's decision that Plaintiff did not meet the paragraph B criteria with respect to Listings 12.06 and 12.08 was not supported by substantial evidence. A remand is required for the ALJ to reevaluate the paragraph B criteria and explicitly consider any impact Plaintiff's eating issues had on her mental functioning.

## B. RFC

With respect to the ALJ's RFC determination, Plaintiff argues that the ALJ failed to consider her symptoms related to her eating disorder when determining her RFC. Specifically, Plaintiff argues that the ALJ failed to account for her inability to nourish herself and digest medication, along with symptoms of weakness, vomiting, and dizziness and the impact they have on her ability to sustain gainful employment. The Commissioner's only arguments are that: (1) once the ALJ found that Plaintiff lacked a medically determinable eating disorder impairment, "it dropped out of the RFC analysis;" and (2) the ALJ's subjective symptom evaluation was not patently wrong given "the many specific reasons the ALJ cited from the record." Defendant's Response at 6, Dkt. 16.

Again, the Commissioner's undeveloped arguments are without merit. As discussed above, the state agency physicians found that Plaintiff's low BMI were a symptom of her psychiatric issues. The ALJ found that Plaintiff's psychiatric issues were severe impairments. As such, the ALJ was required to assess all of Plaintiff's symptoms relating to her severe impairments and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and provide a reasoned evaluation about whether Plaintiff's eating issues did or

did not require any accommodation within the RFC. *See* 20 C.F.R. § 404.1529; *Leslie T. v. Saul*, No. 419CV00113SEBDML, 2020 WL 6586658, at *6 (S.D. Ind. Oct. 19, 2020), *report and recommendation adopted sub nom. Thomas v. Saul*, No. 419CV00113SEBDML, 2020 WL 6583088 (S.D. Ind. Nov. 10, 2020). By not independently evaluating Plaintiff's eating issues, the ALJ glossed over the evidence relating to her eating issues without further explanation as to why they did not impact Plaintiff's limitations. Plaintiff clearly established that she had a low BMI throughout the record along with an inability to digest medication, weakness, vomiting, and dizziness. Yet, the ALJ never addresses this evidence head on to explain why it would not affect Plaintiff's limitations.

Additionally, although the Commissioner states that the ALJ gave "many specific reasons" for discounting Plaintiff's subjective symptoms, the Commissioner fails to identify these reasons and it is not otherwise apparent from the ALJ's decision. The ALJ's decision notes several instances where the record contradicted Plaintiff's reports relating to injuries she sustained as a result of domestic abuse, her living situation in relation to her abuser, her ability to do household chores and go out of the house alone, along with reports of why she was not able to work. "As the Seventh Circuit has recognized, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Luigi B. v. Saul*, No. 18 CV 7392, 2021 WL 83508, at *12 (N.D. Ill. Jan. 11, 2021) (citation omitted). But the ALJ does not explain how these discrepancies led her to discount Plaintiff's symptoms relating to her eating issues or otherwise discredit objective reports of a low BMI. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), as amended (Aug. 20, 2014) ("[T]he ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the

evidence in the record.") (internal quotation omitted). If the ALJ did not believe that Plaintiff was unable to keep food down she should have explained her reasons.

Moreover, despite acknowledging that Plaintiff was unable to take her medications approximately every two weeks because of her stomach issues, the ALJ concluded that Plaintiff's RFC "limitations also reflect the success of treatment actually received" noting that Plaintiff experienced periods of improvement in her anxiety with counseling and medications. R. 24. The ALJ makes no mention of Plaintiff's recent emergency department visit for anorexia where Plaintiff was unable to keep anything down and stated that she was referred there by her treater, noting that all other resources, including counseling, had been exhausted. "An ALJ may rely on medical evidence that the condition is treated and controlled by medication." *Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018). However, if the ALJ found that Plaintiff's impairments were controlled by counseling and medications, she needed to explain this in her decision and provide enough reasoning to show why Plaintiff's inability to digest food and medications did not affect her limitations. *See Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.") (internal quotation marks and citation omitted). Moreover, if the ALJ found that Plaintiff's eating issues were not evidence of her anxiety, the ALJ should have clearly stated so in her decision.

As the ALJ noted, there were no treating physician opinions to consider. The only medical opinions of records were those of the uncontradicted non-examining state agency physicians, whose opinions the ALJ gave great weight. R. 23. The ALJ relied on these opinions and included limitations for simple work instructions and limitations in social interaction to account for Plaintiff's symptoms. But neither the ALJ nor the state agency physicians addressed Plaintiff's

19

eating issues head on. Instead, they offer vague references to Plaintiff's low BMI and medication management. This leaves this Court uncertain if they considered Plaintiff's eating issues when determining her functional limitations. Therefore, the ALJ's reliance on their opinions does not provide substantial evidence for her decision where she provided little discussion of the impact Plaintiff's eating issues had on her limitations. For these reasons, the Court believes that a remand is warranted for the ALJ to evaluate Plaintiff's mental functioning limitations considering all the evidence in the record relating to Plaintiff's eating issues.

### C. Listing 12.13

As mentioned above, Plaintiff argues that the ALJ erred in failing to evaluate Listing 12.13 for eating disorders. The Court is remanding the case due to a failure to evaluate the paragraph B criteria under Listings 12.06 and 12.08 and for further evaluation of the RFC. As such, the Court need not rule on this issue. However, this Court makes the following observations to provide additional guidance on remand.

Plaintiff argues that the ALJ erred when she did not evaluate Plaintiff's eating disorder as a distinct impairment or consider Listing 12.13. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not have a medically determinable eating disorder impairment and that without such an impairment Plaintiff cannot meet Listing 12.13.

However, the ALJ did not rule that Plaintiff did not have a medically determinable eating disorder. Rather, the ALJ stated: "Nor is the claimant's low Body Mass Index likely related to digestive issues absent any related diagnosis. 16F. Therefore, there are no severe impairments from this condition and the following RFC does not include any, absent evidence of work-related limitation of function." R. 18. This statement is problematic because it appears to indicate that the ALJ thought she could only consider Plaintiff's low BMI a medically determinable impairment if

it was caused by digestive issues. Moreover, the ALJ never indicated that she considered and rejected Listing 12.13 for eating disorders.

On remand, the ALJ should address head on Plaintiff's alleged eating disorder. If the ALJ does not believe that Plaintiff has a medically determinable eating disorder because no acceptable medical source made such a finding, she must state that. The ALJ should include in her analysis Plaintiff's recent emergency department visit in September 2018, which addresses her continued struggle with eating issues. The Court notes that although only a nurse aid made the notation that Plaintiff suffered from an eating disorder, the record reflects that she conferred with an acceptable medical source, namely the emergency room physician, when making such a diagnosis. However, there are no other records relating to this hospital visit in the record, despite this stated consultation with an emergency room physician. Accordingly, on remand the ALJ should further evaluate this evidence and request any additional medical evidence necessary to assist the ALJ in fully evaluating Plaintiff's eating issues.

In remanding this case, the Court is not indicating that the issues raised in this appeal must be resolved in a particular way or that they will all turn out to be material, but rather that they should be explored more thoroughly. All these issues should be considered in a comprehensive analysis on remand with more explicit analysis by the ALJ.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: June 16, 2021          By:

Lisa A. Jensen
United States Magistrate Judge